IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DARLENE FAYE NAZELRODT,

        Plaintiff,

v.                                                                                Civil Action No. 3:14-cv-54

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On May 26, 2014, Darlene Faye Nazelrodt ("Plaintiff") filed this action for judicial review of an adverse decision of the Commissioner of Social Security denying her claims her disability insurance benefits ("DIP") under Title II of the Social Security Act. ECF No. 1. The Commissioner filed her answer on August 5, 2014. ECF No. 5. Plaintiff then filed her motion for summary judgement on September 4, 2014. ECF No. 9. The Commissioner filed her motion for summary judgement on September 22, 2014. ECF No. 11. The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

       1.       Plaintiff's motion for summary judgement. ECF No. 9.

       2.       The Commissioner's motion for summary judgement. ECF No. 11.

**C. Recommendation**

I recommend both motions for summary judgment, ECF Nos. 9 and 11, be **DENIED** and the case be remanded to the ALJ solely for a sufficiently specific discussion as to why the opinion of

Dr. Bensenhaver was given very little weight.

## II. FACTS

**A. Procedural History**

Plaintiff applied for DIB on August 12, 2011, alleging a disability beginning on February 1, 2011. R. 146. Plaintiff's claims were initially denied on October 3, 2011, and upon reconsideration on January 4, 2012. R. 65, 92. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and, on February 6, 2013, an ALJ hearing was held before ALJ Karl Alexander. R. 28-57. Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). *Id*. On March 11, 2013, the ALJ found that Plaintiff had not been under a disability from February 1, 2011, through the date of the ALJ's decision. R. 13-23. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on April 1, 2014. R. 2. Plaintiff then timely brought her claim to this Court.

**B. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that the Plaintiff was not under a disability during the period at issue.

<u>1. Plaintiff's Physical Health History</u>

Plaintiff alleges her back pain began in February 2011, when she "picked up [her] grandchild, which weighed probably at that time 15-20 pounds" and "felt like [her] back broke." R. 36.

On February 15, 2011, Plaintiff underwent an x-ray and MRI of her lumbar spine. R. 217-18. The x-ray physician found Plaintiff had "[g]eneralized mild facet joint degenerative changes with a more severe focal disc space narrowing at L5-S1 level without any evidence of fracture or acute

process." R. 217. Plaintiff's MRI revealed degenerative disc disease and "severe narrowing of the intervertebral disc space at L5-S1," however, "[n]o evidence of disc herniation or spinal stenosis are noted." R. 218.

During the relevant period, Dewey Bensenhaver, M.D., was Plaintiff's primary physician. On February 16, 2011, Plaintiff reported to Dr. Bensenhaver that she was experiencing back pain. R. 326. She reported that her pain increased when sitting and, because of her pain, she was unable to rest for long periods at a time. *Id.*

On April 18, 2011, Yeshvant Navalgund, M.D., diagnosed Plaintiff with "[d]egeneration of lumbar intervertebral disc" and "[f]acet arthropathy." R. 240. On April 25, 2011, Plaintiff underwent a "left medial branch block[] in the lumbar area" of her back. R. 242. A second lumbar block was performed on May 2, 2011. R. 244.

On May 4, 2011, J. David Lynch, M.D., assessed, similarly to Dr. Navalgun, that Plaintiff had "[l]umbar degenerative disk disease" and pain in the sacral region of her spine. R. 247. On May 16, 2011, Dr. Navalgund noted that Plaintiff's gait was "unremarkable" and was able to "ambulate[] without devices." R. 250.

On May 20, 2011, Plaintiff reported to Dr. Bensenhaver that her "pain is constant" and she is "not able to sit/lye [sic] without pain." R. 325. She reported that the lumbar injections decreased her pain only temporarily. *Id.* During this appointment, she reported her pain was now "5/10." *Id.* Plaintiff underwent two more lumbar blocks on June 6, 2011, and June 13, 2011, respectively. R. 251-53.

On July 11, 2011, Plaintiff was again examined by Dr. Navalgund. R. 255-57. Dr. Navalgund noted "100% improvement of her low back pain for one week," however, her pain still increased at

3

night. R. 255. Dr. Navalgun found Plaintiff's gait was again "unremarkable" and she is able to stand with a neutral stance. *Id.*

On August 1, 2011, Plaintiff underwent a "[l]eft lumbar medial branch radiofrequency ablation" on her lumbar spine. R. 257. On August 8, 2011, she underwent the same procedure on the right side of her lumbar spine. R. 259.

On August 12, 2011, Dr. Bensenhaver observed that Plaintiff was "in obvious discomfort" and had "trouble sitting and laying." R. 267. On this date, Plaintiff applied for her DIB claim. R. 59.

On August 24, 2011, Plaintiff reported to that she could not "rest flat on her back or on her stomach" because of "pressure in her low back." R. 261. She also complained off "numbness in the bottom of her feet" and "intermittent numbness in her hands." *Id.* On September 26, 2011, Plaintiff underwent a lumbar epidural steroid injection. R. 284.

On October 3, 2011,[1] Dr. Besenhaver completed a routine abstract form for the West Virginia Social Security Disability Determination Section. R. 263-65. Dr. Besenhaver noted that Plaintiff could not lift more than ten pounds, had postural limitations, a limited range of motion in her lower back, and could not straighten her legs. *Id.*

Also on October 3, 2011, a single decision maker ("SDM") denied her DIB claim at the initial level. R. 59-66. The SDM concluded that "[b]ased on the documented filings" Plaintiff was not disabled because although she cannot perform past jobs, "[i]t is believed she retains the ability to perform less demanding work." R. 65.

During an appointment with Dr. Lynch on October 17, 2011, Plaintiff noted that "the only

---

[1] The date the routine abstract form was completed may be October 3, 2011, or August 25, 2011. The August date is printed at the top of the form, however, beside Dr. Besenhaver's signature, the October date is handwritten. In the ALJ's decision, he found that the routine abstract form was drafted on August 25, 2011, rather than on October 3, 2011. R. 21.

4

relief she is getting [from her back pain] is pacing around." *Id.* Plaintiff also reported pain in her lower back, arms, and neck. *Id.* On November 9, 2011, Plaintiff again met with Dr. Lynch. R. 289. During this appointment, Plaintiff reported that in addition to her back pain, pain "is starting to go up her in her mid back and occasionally up her neck." *Id*. She also "relate[d] she cannot sit for any length of time." *Id.* Dr. Lynch impressed that Plaintiff has "[l]umbosacral strain, persistent low back pain" and "degenerative changes to her MRI back on 02/15/2011 across the L5-S1 disk space." *Id.*

On November 21, 2011, Plaintiff underwent an MRI of her cervical spine. R. 320. The MRI revealed an "[a]bnormal MRI of the cervical spin demonstrating: Mild degenerative disc disease with cervical spondylosis with a rightward disc bulge at C3-C4 and C4-C5 with mild right neural foramiral narrowing and leftward disc bulge at C5-C6 with mild left neural foraminal narrowing." *Id.*

On December 12, 2011, Fulvio Franyutti, M.D., found Plaintiff not disabled after a reconsideration of her DIB claim. R. 68-77. Dr. Franyutti found Dr. Bensenhaver's medical opinion "contain[ed] inconsistencies, rendering it less persuasive." R. 75. Dr. Franyutti affirmed the opinion of the SDM finding that, although Plaintiff is unable to perform her previous work, she "retains the ability to perform less demanding work." R. 77.

2. Plaintiff's Mental Health History

On May 4, 2011, Plaintiff reported to Dr. Lynch that "[s]he has memory, attention span difficulties" and "a history of depression/anxiety but no treatment in the past." R. 246. Plaintiff also reported that she has difficulty focusing while doing computer work and "[h]as some insomnia and only sleeps zero to 4 hours" a night. *Id.*

On Dr. Besenhaver's form for the West Virginia Social Security Disability Determination

5

Section, he noted that Plaintiff was "depressed" about her physical condition. R. 263.

On November 9, 2011, Dr. Lynch reported that Plaintiff, on examination, appeared "alert and orientated." R. 289.

On December 19, 2011, Tina Yost, Ed.D., performed a psychological evaluation of Plaintiff. R. 338-40. Dr. Yost noted that Plaintiff was cooperative, but was in a depressed mood and "tend[ed] to dwell on the negative." R. 340. Dr. Yost diagnosed Plaintiff with "Generalized Anxiety Disorder" and "Major Depressive Disorder, Moderate." *Id.*

On January 3, 2012, as part of the reconsideration of her DIB claim, Bob Marinelli, Ed.D, examined the severity of Plaintiff's mental impairments. R. 73-75. In reviewing her medical record, Dr. Marinelli concluded that Plaintiff's mental impairments were non-severe. R. 74.

On May 7, 2012, during a consultation with Anita Minghini, M.D., Dr. Minghini reported that Plaintiff's "judgement and insight appear normal" and she appeared "slightly anxious." R. 417.

**C. Testimonial Evidence**

Testimony was taken at a hearing held on February 6, 2013. R. 28-57. The following portions of the testimony are relevant to the disposition of this case.

At the date of the hearing, Plaintiff testified she was fifty years old, married, and has three adult children. R. 32-33. She testified that she last worked in January 2011. R. 33. She testified that she worked as a machine operator for fifteen years. R. 35. At this position, she "built cabinets, parts, and assembled them and put them together." R. 34. At this position, she had to lift twenty-five to thirty pounds. *Id.* Additionally, the position required her to stand, walk, bend, and pick up wood. *Id.*

Plaintiff testified that her shooting pain began in February 2011 when she lifted her grandchild and "felt like [her] back broke." R. 36. She testified that she has had some back problems

for fifteen years previously stemming from a car accident. *Id.* She also testified that, before her February 2011 injury, she would sometimes experience back spasms after lifting objects at work. R. 36. Because of her injury, she testified that she experiences pain in her shoulders and back, numbness in her arms, and swelling in her fingers. R. 37. She testified that she is most comfortable standing and can only sit for ten to fifteen minutes at a time. R. 37-38.

Plaintiff testified that she will walk to her mailbox and "pace around the house" to "do things around the house." R. 39. She testified that, because of her difficulty balancing, she has difficulty dressing and showering. R. 39-40. She testified that she is able to stand, fold laundry, and dust. R. 40-41.

Plaintiff testified that she has not driven a car in a year-and-a-half. R. 42. She testified that she is most uncomfortable sitting in a car. *Id.* When asked about how much weight she could lift, Plaintiff testified that she could "pick up a jug of milk off the kitchen floor, [and] put it in the refrigerator . . . ." R. 43.

Plaintiff testified that she has difficulty with her memory. R. 43. She also experiences drowsiness and nausea. R. 44. She testified that, because she cannot remain comfortable in bed, she only sleeps roughly three hours a night on "a good night." *Id.* Plaintiff testified that she has attempted physical therapy and injections. R. 44-45.

A VE also testified at the hearing. R. 53. First, the VE explained that Plaintiff's previous work as a machine operator is classified as medium and semi-skilled work. R. 55. Next, the ALJ posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual of the claimant's age, educational background, and work history would be able to perform a range of light work. The work should involve, primarily, standing and walking, and, with regard to periods of sitting, the person would be able to sit for about 15 minutes without – and then would change

position. The person could walk up to a half-a-mile at a time, could perform postural movements occasionally except could not climb ladders, ropes, or scaffolds. To the maximum extent possible, should work on level and even – walk on level and even surfaces. Should not be exposed to temperature extremes, wet or humid conditions, environmental pollutants or hazards. Should work in a low stress environment, with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the work routine. At this time would be limited to unskilled work involving only routine and repetitive instructions and tasks. And should have no interaction with the general public and no more than occasional action with co-workers and supervisors. Would there be any work in the regional or national economy that such a person would perform?

R. 55-56. The ALJ answered that there was work in the economy that the hypothetical individual could perform, and listed three sample occupations. R. 56. On examination by Plaintiff's counsel, the ALJ noted that if an employee is "off-task 10 percent or more of the time . . . that would eliminate . . . a competitive work routine at any level." *Id.* The ALJ testified that if an employee missed "two or more days per month . . . that would gain the attention of the supervisory personnel . . . and if that was not successfully corrected, it would result in termination." R. 57. The ALJ also noted that an individual would not be able to perform the same occupations listed by the ALJ if the hypothetical person had "minimal use of their hands." *Id.*

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since February 1, 2011, the alleged onset date of Plaintiff's disability. R. 15. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease/degenerative arthritis of the lumbar spine with mild facet joint degenerative changes, left facet arthropathy, severe disc space narrowing of L5-S1 and mild spondylolytic changes; lumbar spine strain, mild degenerative disc disease of the cervical spin with

8

bulging discs and mild neural foraminal narrowing; obesity; major depressive disorder, moderate; and generalized anxiety disorder. *Id.* At the third step, the ALJ found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. *Id.* Before considering step four of the sequential evaluation process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> [T]he work should consist primarily of standing and walking, with the claimant being able to walk up to a half mile at a time; as to periods of sitting, the claimant can sit for about fifteen minutes at a time before changing position; the claimant can perform postural movements occasionally, except cannot climb ladders, ropes or scaffolds; to the maximum extent possible, the claimant should do all walking on level and even surfaces; the claimant should have no exposure to temperature extremes, wet or humid conditions, environmental pollutants or hazards; the claimant should work in low stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine; the claimant must be limited to unskilled work involving only routine and repetitive instructions and tasks; the claimant should have no interaction with the general public and minimal, no more than occasional, interaction with co-workers and supervisors.

R. 17. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. R. 21. At the final step, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 22.

## IV. MOTIONS FOR SUMMARY JUDGEMENT

### A. Contentions of the Parties

Plaintiff contends that the ALJ's unfavorable decision is based on legal error and not supported by substantial evidence. Specifically, she argues that the ALJ erred in three respects: (1) the ALJ erred because he failed to properly consider her treating physician's medical opinion; (2)

the ALJ erred because he failed to address the basic mental work activities as defined in the commissioner's regulations when formulating his RFC finding; and (3) the ALJ erred because he inconsistently found Plaintiff had only a mild spinal impairment while the evidence showed her spinal condition was severe.

Defendant argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. Specifically, Defendant contends that substantial evidence supports the ALJ's assessment of Dr. Bensenhaver's opinion and assessment of Plaintiff's credible physical and mental limitations.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is

supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. Social Security - Claimant's Credibility

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

**C. Discussion**

1. Consideration of the Treating Physician's Opinion

Under this claim, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Bensenhaver, Plaintiff's treating physician. Further, Plaintiff contends that the ALJ failed to address

11

any of the enumerated factors to explain why he gave little weight to Dr. Bensenhaver's medical opinion. The Commissioner argues that substantial evidence supports the ALJ's assessment of Dr. Bensenhaver's medical opinion. The Commissioner contends that the ALJ clearly indicated that he did not find Dr. Bensenhaver's limitations persuasive in light of the entirely of the medical evidence and other evidence of record.

All medical opinions are to be considered by the ALJ in determining disability status. 20 C.F.R. § 404.1527(b). If an ALJ finds that a that a treating physician's medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." § 404.1527(c)(2).

"A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, 1996 WL 374188 (July 2, 1996). Indeed, "[c]ourts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). Even if an ALJ does not "give the treating source's opinion controlling weight," he still must consider: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. § 404.1527(c).

However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent

with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see also* § 404.1527(c)(2). An ALJ must provide "good reasons" for his determinations of weight. § 404.1527(c)(2). SSR 96-2p further provides that:

> [T]he notice of the determination or decision must contain *specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be *sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

(emphasis added).

In this case, the ALJ noted in his decision that Dr. Bensenhaver, Plaintiff's primary treating physician, found that Plaintiff "could lift no more than ten pounds and could perform no postural movement such as climbing ladders, ropes or stairs, balancing on heights or uneven surfaces, bending, stooping, kneeling, crouching or crawling." R. 21. However, the ALJ "accorded" Dr. Bensenhaver's medical opinion "little weight, as there was not any objective medical evidence of record to support such limited restrictions." *Id.* Other than this conclusory statement, the ALJ does not provide any specific reason or facts why he provided Dr. Bensenhaver little weight.

The Commissioner argues that Plaintiff is incorrect to "fault the ALJ's concise style in decision writing" and contends "an ALJ is not required to refer to every piece of evidence in his decision." ECF No. 12 at 10. Even if an ALJ is not required to refer to *every* piece of evidence in determining weight, he must refer to *some* evidence. As stated previously, the ALJ's decision must provide "specific reasons for the weight given . . . supported by the evidence in the case record . . . [and] be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." R. SSR 96-2p. Here,

the ALJ's decision simply fails to provide any specific reason supported by the evidence in the record. Therefore, remand is necessary for a sufficiently specific discussion as to why the opinion of Dr. Bensenhaver was given very little weight.

2. The Consideration of Plaintiff's Memory in the ALJ's RFC

Plaintiff contends that the ALJ erred by failing to include any mention of Plaintiff's alleged memory deficits in the ALJ's RFC or hypothetical question to the VE. The Commissioner argues that substantial evidence supports the ALJ's RFC finding as to her mental abilities.

Under 20 C.F.R. § 404.1545, when an ALJ assesses a claimant's mental abilities, he must:

> [F]irst assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

§ 404.1545(c). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 (January 1, 1985).

As to Plaintiff's mental heath, the ALJ limited Plaintiff's RFC to a:

> [L]ow stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine; the claimant must be limited to unskilled work involving only routine and repetitive instructions and tasks; the claimant should have no interaction with the general public and minimal, no more than occasional, interaction with co-workers and supervisors.

R. 17. The ALJ noted that Plaintiff was evaluated by Dr. Yost, but since "has received no other mental health treatment." R. 20. In "generously accomodat[ing]" Dr. Yost's findings, the ALJ

14

specified that he limited Plaintiff to "low stress environments . . . no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine." *Id.* The ALJ also addressed that he limited Plaintiff to unskilled work with "no interaction with the general public and minimal . . . interaction with co-workers and supervisors." *Id.*

Although he considered, in part, Dr. Yost's medical opinion, the ALJ "accorded substantial weight to the . . . findings of State Agency Psychiatric Consultant" Dr. Marinelli. R. 21. The ALJ specified that he provided some of the limitations in his RFC suggested by Dr. Yost's evalution only on "the utmost benefit of the doubt." *Id.* However, the ALJ found that Dr. Marinelli's "balanced assessment of the claimant's mental condition . . . reflects familiarity with Social Security Administration disability adjudications and with the medical evidence of record." *Id.* Further, the ALJ noted that Plaintiff's testimony at the ALJ hearing, especially in regard to her "daily living, her history of treatment, and the consultative examination supports Dr. Marinelli's conclusions." *Id.* Therefore, based on the ALJ's reasonable findings as to Plaintiff's mental RFC, substantial evidence is satisfied under this claim.

3. The Consideration of Plaintiff's Spinal Impairments as a Mild Impairment

In Plaintiff's last claim, she contends "that the ALJ inconsistently characterized [Plaintiff's] lumbar spine impairment as a mild impairment when, in realty, the objective medical evidence of record showed this was a severely abnormal condition." ECF No. 10 at 10. The Commissioner argues that Plaintiff's objection to the ALJ's finding is a "disagreement with the ALJ's credibility finding" and "is insufficient to overturn the ALJ's determination." ECF No. 12 at 12.

"In assessing the total limiting effects of your impairment(s) and any related symptoms, [an

15

ALJ] will consider all of the medical and nonmedical evidence, including the information described in § 404.1529(c)." § 404.1529(e). In determining Plaintiff's RFC, the ALJ "found that the claimant has some functional limitations due to her back condition." R. 19. In particular, the ALJ cited an x-ray and MRI taken of Plaintiff's lumbar spine on February 15, 2011. R. 18; 217-18. The x-ray, read by Jong K. Kim, M.D., revealed "[g]eneralized mild facet joint degenerative changes with a more severe focal disc space narrowing at L5-S1 level without any evidence of fracture or acute process." R. 217. The MRI, read by Myung S. Kim, M.D., revealed "[d]egenerative disc disease . . . with severe narrowing of the intervertebral disc space at L5-S1. No evidence of disc herniation or spinal stenosis are noted." R. 218.

Plaintiff argues that her "MRI clearly showed a severely abnormal condition" because the MRI says "severe." ECF No. 10 at 14. Simply because an MRI used the word "severe" does not conclude that Plaintiff's condition is severe. Indeed, simply because Plaintiff's x-ray used the word "mild" does not conclude that Plaintiff's condition is mild. While an ALJ will "use medical sources, including [any] treating source, to provide evidence, including opinions, on the nature and severity of [a claimant's] impairment(s) . . . the final responsibility for deciding these issues is reserved to the Commissioner." § 404.1527(d)(2). "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

In addition to the medical record, the ALJ also considered the credibility of Plaintiff's statements. SSR 96-7p, 1996 WL 374186 (July 2, 1996), requires that:

> If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on

16

the credibility of the individual's statements about symptoms and their functional effects.

*Id.*

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

§ 404.1529(c). Accompanying factors that the adjudicator must also consider when assessing the credibility of an individual's statements are provided in SSR 96-7p. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

The record illustrates that the ALJ evaluated Plaintiff's symptoms in accordance with the two-part test in *Craig* and the factors outlined in § 404.1529 and SSR 96-7p. In step one of the *Craig* test, the ALJ found that Plaintiff has "medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms . . . ." R. 20. In the ALJ's written decision, he addresses, at length, Plaintiff's medical history, including her spinal impairments. R. 17-19. Next, in accordance with the factors set out in § 404.1529 and SSR 96-7p, the ALJ considered whether Plaintiff's subjective statements regarding her symptoms were substantiated by, or conflicted with,

17

the objective evidence in the record, and found Plaintiff "not entirely credible . . . ." R. 20. The ALJ noted that Plaintiff has not "received the type of medical treatment one would expect for a totally disabled individual" as she has only had "a couple of short attempts at physical therapy and some injections" and "has not undergone any surgeries and does not require an assistive device for ambulation." R. 20. The ALJ mentioned that, contrary to her testimony, "she admitted in her Function Report that she can perform all of her personal care such as bathing and dressing." *Id*. The ALJ also cited that Plaintiff "can prepare her own meals, do[] light cleaning . . . wash[] dishes . . . [and] go[] shopping every two weeks . . . ." *Id.*

Therefore, because Plaintiff did not show that the ALJ's credibility determination was "patently wrong" and the ALJ's determination was "sufficiently specific," the ALJ's decision under this claim is supported by substantial evidence. *Powers,* 207 F.3d at 435; SSR 96-7P.

## V. RECOMMENDATION

I recommend that both motions for summary judgment, ECF Nos. 9 and 11, be **DENIED** and the case be remanded to the ALJ solely for a sufficiently specific discussion as to why the opinion of Dr. Bensenhaver was given very little weight.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474

U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: March 18, 2015                     /s/ *James E. Seibert*
                                          JAMES E. SEIBERT
                                          UNITED STATES MAGISTRATE JUDGE